[Civ. No. 61452. Second Dist., Div. Four. Dec. 30, 1981.]

JOSE ROJAS, Plaintiff and Appellant, v.
MARION WOODS, as Director, etc., Defendant and Respondent.

COUNSEL

Toby J. Rothschild, Neil J. Roberts and Marsha Lynn Jones for Plaintiff and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Elizabeth Hong, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**KINGSLEY, J.**—This is a class action, attacking the validity of a regulation adopted by defendant, the Director of the State Department of Social Services. As far as is here pertinent, that regulation requires that an applicant for relief under the Aid for Dependent Children Act be disqualified for receiving such aid for a period of 30 days where he, although then unemployed and actively seeking work, has left a former employment without good cause.[1] The program herein involved—

---

[1] The briefs for plaintiff contain a long account of his financial and personal problems, leading to his decision to resign from a current job (involving moonlighting to support his family) and seek to return to his former occupation as a seaman. Those fac-

usually referred to as AFDC-U—involves a cooperative program be-
tween the state and the federal government. The contention here made
by appellant is that, although a pertinent federal regulation grants to
the state the option of imposing such a limitation,[2] the language of the
California statute—especially section 11201 of the Welfare and Institu-
tions Code—allows of no such limitation.

## I

While this case was pending, and during the briefing stage in
this court, the Legislature amended section 11201 to provide expressly
for the limitation herein involved. It is contended that that legislation
rendered this case moot. However, the trial court issued a preliminary
injunction, restraining the defendant from enforcing the limitation
pending final decision of the case on its merits. That injunction pro-
vided that payments made pursuant to it were "subject to future offset
in the event it is ultimately determined the named plaintiff and all oth-
ers similarly situated are not to have been entitled to such benefits." In
the light of that provision, we cannot say that the case is moot as to the
plaintiff and the other members of the class he represents. While the
provision above quoted speaks only of an "offset," thus impliedly not re-
quiring repayment except from future benefits lawfully grantable, we
cannot, on the record before us, say that there may not have been, or
may not in the future be, benefits subject to the "offset."

## II

It is admitted that section 11201, as it stood at the time herein in-
volved, did not contain language, now incorporated in it by the
amendment, that accepted the option granted to this state by the feder-
al law. Defendant here argues that sections 11205 and 11250 of
the Welfare and Institutions Code support the regulation before us.
Those sections read as follows:

Section 11205 provides: "It is the object and purpose of this chapter
to provide aid for children whose dependency is caused by circum-

---

tors might, arguably, have supported an attack on the departmental finding that he had
left his job without good cause. But such an attack could only be made by a proceeding
for administrative mandate under section 1094.5 of the Code of Civil Procedure. The
order certifying the present case as a class action limited the issue to the validity, on its
face, of the regulation herein involved.

[2]*Batterton v. Francis* (1977) 432 U.S. 416 [53 L.Ed.2d 448, 97 S.Ct. 2399].

stances defined in Sections 11250 and 11251, to keep children in their own homes wherever possible, and to provide the best substitute for their own homes for those children who must be given foster care.

"Those engaged in the administration of aid under this chapter are responsible to the community for its effective, humane, and economical administration.

"It is the intent of the Legislature that the children shall be given every opportunity to progress in the educational system and that their capacity for such shall not be impaired by nutritional deficiencies. The employment and self-maintenance of parents of needy children shall be encouraged to the maximum extent and this chapter shall be administered in such a way that needy children and their parents will be encouraged and inspired to assist in their own maintenance. The department shall take all steps necessary to implement this section."

Section 11250 provides, in pertinent part, as follows: "Aid, services or both shall be granted under the provisions of this chapter, and subject to the regulations of the department, to families with related children under the age of 18 years ... in need thereof because they have been deprived of parental support or care due to: ... [¶] (c) The unemployment of a parent or parents." The contention is that, since those sections imply that pressure should be put on parents to become self-supporting, the regulation here before us is no more than a legitimate implementation of that basic purpose. We cannot accept that argument. Prior to the amendment, the statutes contained a requirement directed to that purpose—namely a requirement that the parent actively seek employment, and accept suitable employment if available. We can see, in the statutory scheme as a whole, no legislative intent to require anything more by way of inducing or pressuring a parent to become self-supporting. The additional pressure which the defendant sought by the regulation to impose was always available to the Legislature; until the amendment the Legislature had not chosen to utilize it. The defendant had no power to impose a mode of pressure that the Legislature had not elected to adopt.

The judgment is reversed.

Woods, J., concurred.

FILES, P. J., Dissenting.—I would affirm the judgment. In my opinion the regulation in question is authorized by Welfare and Institutions Code sections 11205 and 11250.