[No. A070461. First Dist., Div. One. May 24, 1996.]

RUTH MOORE, Plaintiff and Appellant, v.
ELOISE ANDERSON, as Director, etc., Respondent.

**COUNSEL**

Sue Ochs and Amitai Schwartz for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Asher Rubin, Deputy Attorney General, for Respondent.

## OPINION

**STEIN, J.**—Ruth Moore (appellant) appeals from a judgment denying her petition for a writ of mandate seeking reversal of a decision by the Director of the Department of Social Services, (respondent) denying Aid to Families with Dependent Children-Foster Care benefits (AFDC) to appellant on behalf of her granddaughter Alisha.

### FACTS

Alisha was born prematurely. She suffered from low birth weight and tested positive for cocaine when she was 18 days old. She was not discharged from the hospital until January of 1993 when she was two and one-half months old. The county filed a dependency petition pursuant to Welfare and Institutions Code section 300, alleging that Alisha's mother, Elaine, was an active drug user, that the minor was medically fragile, and the home was not equipped for installation of medical equipment necessary to the infant's survival. On February 2, 1993, the court adjudicated Alisha a dependent of the court, and placed her out of the home in emergency foster care. During the time Alisha was in emergency foster care, she received AFDC benefits.

In August of 1993, Alisha was placed with appellant, who had recovered from medical problems that prevented her from providing care for Alisha earlier. Ruth Moore applied for AFDC benefits on behalf of Alisha. Alisha was now ineligible for state AFDC foster care benefits because she was placed in the home of a relative.[1] In order to qualify for federal AFDC benefits, it was necessary to meet the federal "linkage" requirement, which in this case essentially required appellant to establish that Alisha would have been eligible under the AFDC family group/unemployed program, had she been living in her parents' home, in the month she was removed. (42 U.S.C. §§ 602; 606(a)(1); 672 (a)(4) (A), (B)(i).) The county notified appellant that it had determined that Alisha was ineligible for benefits, because, although Alisha's mother received AFDC family group/unemployed benefits in the month the dependency petition was filed, the county had ascertained that Alisha's father was living with her mother at that time, and had been living with Alisha's mother for the past eight years. The father reported no income, and the county could locate no record of employment. The county concluded

---

[1]To be eligible for the state AFDC foster care program the child must be placed with a nonrelative or be living with a nonrelated legal guardian.

that Alisha was ineligible on the basis of parental absence, and that there was also no "linkage" based on unemployment in the absence of some evidence that the father or mother had some connection with the work force.

Appellant sought an administrative fair hearing, in which she contended that Alisha should be found eligible on the basis of parental incapacity, based on the findings in the juvenile court proceeding that the mother was a substance abuser who admitted to current use, and the other findings pursuant to Welfare and Institutions Code section 300, subdivision (b) that, "[t]he minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, . . . by the inability of the parent . . . to provide regular care for the minor due to the parent's . . . mental illness, developmental disability, or substance abuse." The administrative law judge denied the claim, stating the following reasons: "The child is not state eligible, because she is living with a relative. She is not federally eligible because although her mother appears to have been receiving AFDC in the month in which the petition was filed, her mother was ineligible, since there was no basis of deprivation. [¶] Both parents were in the home so deprivation due to parental absence did not exist.[2] Neither established a connection with the work force, so deprivation due to unemployment did not exist. The case contains none of the evidence which is required to establish deprivation due to parental incapacity, so that cannot be found to exist. The finding by the court that the child should be removed from the home does not establish that the parents were incapacitated for AFDC purposes."

Appellant then filed a petition for a writ of mandate pursuant to Code of Civil Procedure section 1094.5, and alleged a cause of action pursuant to 42 United States Code section 1983. Respondent suggested that the court remand the matter for further factfinding, alleging, inter alia, that new evidence concerning the father's connection to the workforce might establish linkage based on unemployment. Respondent also suggested a remand would give appellant an opportunity to produce evidence of parental incapacity, and to ascertain the difference, if any, between the supplemental security income (SSI) benefits and the amount of AFDC she might be eligible for. Appellant opposed a remand, and asked the court to decide the case on the record before it.

---

[2]The administrative law judge relied upon a report prepared by a welfare fraud investigator, containing admissions by Alisha's mother and father that both parents resided in the home, despite the fact that Alisha's mother had stated the father was absent in her application for benefits. Although appellant contended below that it was a violation of county policy to deny benefits to Alisha based upon the report, instead of awaiting a formal finding of fraud and an overpayment assessment, she does not raise that issue on appeal.

The court denied the petition.[3]

## ANALYSIS

A "dependent child" is defined as "a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home . . . or physical or mental incapacity of a parent." (42 U.S.C. § 606(a)(1).) Federal regulations define parental incapacity as: " 'Physical or mental incapacity' of a parent shall be deemed to exist when one parent has a physical or mental defect, illness, or impairment. The incapacity shall be supported by competent medical testimony and must be of such a debilitating nature as to reduce substantially or eliminate the parent's ability to support or care for the otherwise eligible child and be expected to last for a period of at least 30 days." (45 C.F.R. § 233.90(c)(1)(iv) (1995).) California has enacted a comparable regulation that conforms to federal law, stating that deprivation exists if the physical or mental incapacity of the parent, "reduces substantially or eliminates the parent's ability to care for the child." (Cal. Dept. of Social Services Manual of Policies and Procedures § 41-430.15.) The regulations further provide that verification of incapacity shall be based upon the following acceptable evidence: " 'Form CA 341 (Medical Report) or other written statement from a physician licensed or certified psychologist, or by an authorized member of his or her staff with access to the patient's medical records that provides information sufficient to substantiate the determination of incapacity and includes the following: [¶] '.221 A diagnosis of the parent's condition and explanation of the extent to which it prevents him or her from engaging in employment or why it reduces substantially or eliminates the parent's ability to support or care for the child. [¶] '.222 The expected duration of the condition, and date of the next scheduled examination or appointment. [¶] '.223 The doctor's name, address and phone number.' " (Hereinafter verification regulation). The verification regulation on its face appears to be a reasonable interpretation of the federal requirement that incapacity be established by "competent medical testimony," by specifying the documentation an applicant should provide.

---

[3]In the meantime, in October of 1993, after the county had notified appellant that Alisha was ineligible for AFDC, appellant had applied for SSI benefits. In October of 1994, after the fair hearing, she received a lump SSI payment retroactive to October of 1993. At the time of the judgment on her petition she was receiving approximately $372 per month. Her SSI payments must be offset against AFDC benefits. Nevertheless, Alisha's receipt of SSI does not moot her petition because her continued receipt of SSI is contingent on her continuing disabilities (see 42 United States Code section 1382c(a)(3)(A)). Her AFDC benefits also could exceed the SSI payment if she is found eligible for a specialized care increment and social and supportive services not available to SSI recipients.

■ Appellant concedes that she did not support her application for benefits with the documentation required by the California regulation. Nevertheless she challenges the validity of the verification regulation on several grounds. She argues that the regulation is invalid because it impermissibly narrows the scope of the authorizing federal statute by imposing additional conditions of eligibility. (See, e.g., *Mooney* v. *Pickett* (1971) 4 Cal.3d 669 [94 Cal.Rptr. 279, 483 P.2d 1231] [county policy denying general assistance to employable single invalid because inconsistent with general assistance statute]; *Rojas* v. *Woods* (1981) 127 Cal.App.3d 286 [179 Cal.Rptr. 420] [Department of Social Services regulation that disqualified AFDC applicants from receiving benefits for 30 days if they left employment without good cause invalid because placed a restriction on eligibility not authorized by state statute]; *Washington* v. *Board of Supervisors* (1993) 18 Cal.App.4th 981 [22 Cal.Rptr.2d 852] [county-imposed time limit on receipt of general assistance exceeded county's authority under state law by imposing an unauthorized condition of eligibility].) Specifically, she asserts that the verification regulation effectively adds a new condition of eligibility, i.e., "that an incapacitated parent be receiving medical treatment for her condition at the time of her application for assistance." The regulation does not, on its face require that the incapacitated parent be receiving ongoing treatment. By its terms it requires only that the applicant provide a statement of a physician or licensed psychologist, or authorized staff member, stating the diagnosis, and explaining how the parent's condition reduces or substantially eliminates the ability to support or care for the child, the expected duration and date of next scheduled appointment. The regulation does not, by its terms, condition eligibility upon the parent receiving treatment, and we do not construe it as authorizing termination of eligibility based upon the parent's failure to pursue ongoing treatment.

Appellant's more fundamental contention is that even if the verification regulation appears reasonable on its face when the parent is the applicant, and is seeking to establish his or her own incapacity, it is not reasonable when applied to a foster parent seeking to establish the incapacity of the parent. She argues that it is impossible for a foster parent to obtain the medical documentation because the medical information sought is confidential. She concludes that the verification regulation effectively excludes a class of otherwise eligible persons from receiving benefits, by requiring a form of verification that she asserts is impossible to obtain. (See, e.g., *Nelson* v. *Board of Supervisors* (1987) 190 Cal.App.3d 25 [235 Cal.Rptr. 305] [verification ordinance requiring general assistance applicant to establish residence by providing a residential address, although reasonable on its face, invalid because it effectively precludes class of homeless persons who in fact reside in county from qualifying for assistance].) It is not however

"impossible" for the foster parent to obtain the medical information, although it may be necessary to obtain the parent's consent to release of the information, or the cooperation of the parent in submitting to a medical examination. The record in this case, however, is devoid of any evidence that appellant attempted to obtain the required documentation, or that the mother refused to cooperate. Thus the factual predicate to her "as applied" challenge, i.e., that the she is unable to obtain the documentation specified, is lacking.[4]

The bare fact that this regulation requires the cooperation of the parents cannot by itself invalidate it, because the federal AFDC statute expressly conditions eligibility for AFDC foster care benefits upon a determination that the child was receiving or would have been eligible for benefits in the home the child is removed from. Therefore *all* applicants for the federal AFDC foster care benefits necessarily are in the position of having to establish eligibility based upon facts concerning a home to which the foster parent is a stranger. The statute itself contemplates that eligibility is derivative, and verification of eligibility may require the cooperation of the parents, including disclosure of personal financial and medical information. There is no factual or legal basis to presume that *as a class* the incapacitated parent will not cooperate. We do not reach the question whether this regulation would be valid as applied in circumstances where the allegedly incapacitated parent refused to cooperate, and the applicant submits evidence of efforts made to obtain the documentation and of the parent's refusal to cooperate.[5]

The absence of any evidence that appellant attempted to obtain the verification of incapacity and was unable to provide it because of the mother's refusal to cooperate also disposes of appellant's claim that the county violated the Needy Families' Paperwork Reduction Act. (Welf. & Inst. Code, §§ 11275-11280.) The duty of the county to assist the applicant in obtaining information or verification from a third party does not arise until the applicant "establishes that . . . she has made a good faith effort to obtain information or verification from a third party. . . ." (Welf. & Inst. Code, § 11275.10, subd. (a).)

---

[4]Appellant cites the general comments of the trial court to the effect that a drug addict typically does not see doctors. These observations by the court may be an accurate statement of reality, but they do not constitute evidence of efforts made to obtain cooperation in this case, nor do they constitute an evidentiary basis for declaring the regulation invalid as applied to all drug addicts, or foster parents caring for children removed from the home of a substance abusing parent.

[5]In this case, the record shows that Alisha's mother and father did respond to inquiries related to determination of Alisha's eligibility. Moreover, once the issue of a possible overpayment arose, Alisha's mother had some incentive, apart from natural parental concern, to cooperate in the effort to establish an alternative basis for eligibility based on parental incapacity, as a defense to the alleged overpayment.

Appellant argues that respondent nevertheless should have accepted the findings pursuant to Welfare and Institutions Code section 300, subdivision (b) in lieu of the medical report specified in the verification regulation.[6] As we have explained, in the absence of some basis for finding the regulation to be invalid, or some evidence that despite good faith efforts, appellant is unable to obtain the verification required, it is immaterial that there may be other reasonable methods of verifying parental incapacity. Moreover, the section 300, subdivision (b) findings appellant submitted are based on the statements of the social worker, and the administrative record does not include any underlying medical reports that may exist. The federal regulations specify that the "incapacity *shall be* supported by *competent medical testimony*." (45 C.F.R. § 233.90(c)(1)(iv) (1995), italics added.) ▉ The state, if it elects to participate in the federal AFDC program, is required to comply with federal law. (See *Green* v. *Obledo* (1981) 29 Cal.3d 126, 131 [172 Cal.Rptr. 206, 624 P.2d 256].) ▉ By accepting such findings in lieu of "competent medical testimony" the state could risk losing federal financial participation. Although the section 300, subdivision (b) findings are similar to the federal definition of incapacity, they are not identical. The federal definition of incapacity for AFDC purposes is defined as "*a physical or mental defect, illness, or impairment*" that reduces "*substantially or eliminate[s]* the parent's ability to support or care for the otherwise eligible child." (45 C.F.R. § 233.90(c)(1)(iv) (1995), italics added.) The section 300, subdivision (b) finding by contrast states that: "The [child] has suffered, or there is a substantial risk that the [child] will suffer, serious physical harm or illness, . . . by the inability of the parent . . . to provide *regular care* for the [child] due to the parent's . . . *mental illness, developmental disability, or substance abuse*." (Italics added.) Although section 300, subdivision (b) specifically mentions substance abuse, it is not clear whether substance abuse is included in the federal definition, as a "physical or mental defect, illness or impairment." Nor is it clear that the degree of deprivation caused by the mental or physical defect is the same. The federal definition requires that the defect "*reduces substantially or eliminates* the parent's ability to care for the child," whereas section 300, subdivision (b) requires evidence of the inability of the parent to provide "*regular care*."[7]

In sum, although we do not preclude respondent from accepting other competent medical testimony in lieu of the documentation specified in the

---

[6]The administrative law judge observed that if appellant's argument were accepted then every child who is removed from the home pursuant to Welfare and Institutions Code section 300, subdivision (b) would automatically be eligible for AFDC benefits.

[7]Appellant also raises, for the first time in this appeal, the argument that the county should be collaterally estopped from relitigating the question of parental incapacity in light of the Welfare and Institutions Code section 300, subdivision (b) findings. Apart from the fact that the issue was never presented in the administrative proceedings or to the trial court, the issues are not identical, and therefore collateral estoppel is not applicable. (*Branson* v. *Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 346 [29 Cal.Rptr.2d 314].)

state verification regulation, we find no legal or factual basis for compelling respondent to accept the Welfare and Institutions Code section 300, subdivision (b) findings offered in this case.

CONCLUSION

The judgment denying the petition is affirmed.

Dossee, J. concurred.

**STRANKMAN, P. J.**—I concur in the result. Appellant's central claim is that a child dependency determination that a mother is drug addicted and unable to provide regular care for her child is, standing alone, sufficient to establish the mother's physical incapacity for purposes of federal Aid to Families with Dependent Children (AFDC) benefits so as to entitle the foster parent (appellant grandmother) to collect those benefits for the child's welfare. The claim must be denied since federal regulations require that a demonstration of AFDC parental incapacity "shall be supported by competent medical testimony . . . ." (45 C.F.R. § 233.90(c)(1)(iv) (1995).) Here, no medical testimony of any kind was pursued or presented. Appellant rested her AFDC application upon no more than conclusory statements by social workers from the dependency proceeding that the mother is drug addicted. Accordingly, benefits were properly denied and we need not reach the question of whether the state regulation requesting a physician's written statement to verify parental incapacity impermissibly narrows the federal regulation by establishing a physician's statement as the *only* form of acceptable medical testimony.

I therefore write separately to disavow the majority's gratuitous approval of the state regulation which is interpreted to confine a foster parent's presentation of "competent medical testimony" to a physician's written statement containing a diagnoses of the biological parent's condition—a statement that is confidential and inaccessible to the foster parent absent the beneficent cooperation of a biological parent who has demonstrated an inability to care for the welfare of her child. The aim of AFDC to assure care for needy children will fall tragically short if we place such unreasonable burdens upon their foster parents' entitlement to benefits.