54 F.3d 587
 INTERNATIONAL EVANGELICAL CHURCH OF The SOLDIERS OF THE
CROSS OF CHRIST, Plaintiff-Appellant,
v.
CHURCH OF the SOLDIERS OF THE CROSS OF CHRIST OF the STATE
OF CALIFORNIA; Defendant-Appellee,
and
Rolando Gonzalez, Defendant.
 Nos. 93-56210, 94-55067.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submission Deferred Feb. 10, 1995.
Resubmitted Feb. 17, 1995.
Decided April 28, 1995.
 
 Barbara L. James, Whittier, CA, for plaintiff-appellant.
 Barry A. Fisher, Fleishman, Fisher & Moest, Los Angeles, CA, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: BEEZER and NOONAN, Circuit Judges, and EZRA*, District Judge.
 NOONAN, Circuit Judge:
 
 
 1
 International Evangelical Church of the Soldiers of the Cross of Christ (International Church), a Florida corporation, appeals from the judgment dismissing on the grounds of res judicata its complaint against Church of Soldiers of the Cross of Christ of the State of California, a California corporation (California Church). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 We reverse the district court.PROCEEDINGS
 
 2
 On November 1, 1991, International Church filed its second amended complaint in the Superior Court, County of Los Angeles, against the California Church and Rolando Gonzalez; the latter was never served and is not a party to this appeal. The complaint asserted that International Church held all its assets in an express trust for the religious and charitable purposes stated in its articles of incorporation, viz.:
 
 
 3
 [To] promote the cause of the Christian religion, to promulgate the doctrines and teachings of Jesus Christ and the Gideon Evangelistic Band International, to minister to the spiritual needs of the members of the church and the adherents of the Christian religion, to give counsel to said persons and guide them in their hours of misfortune, to direct them on the paths of righteous living and healthful endeavors, to lead them toward a spiritual life and to instill in them true practice of the Christian faith, without regard to race or creed and for no pecuniary gain. The adherents of this church follow in all respects the teaching of the learned scholar Ernest William Sellers who founded the church in Cuba, March 25, 1930, and of Arturo Rangel, his apostle in Cuba, at the present time.
 
 
 4
 The complaint further stated that on April 20, 1990, officers of International Church signed a corporate resolution purporting to authorize Rolando Gonzalez, the director of its California branch, to transfer all of its California assets to another legal entity and that pursuant to this purported authority Gonzalez had formed California Church on April 30, 1990, thereafter transferring title to it of a large number of parcels of International Church's real property in California as well as its bank deposits in California.
 
 
 5
 The complaint further asserted that these transfers of assets constituted an unlawful breach of the charitable trust under which the assets were held because the defendants had diverted the assets "to promote their own theology, religious teachings and doctrine" and had "publicly renounced their adherence to the theology, religious teaching and doctrine" of International Church.
 
 
 6
 The transfers were asserted to be without consideration. International Church sought a judgment rescinding the transfers and restoring title and possession to it; it also sought an injunction against further transfer or diversion of its assets. As a second cause of action International Church sought a declaratory judgment that the corporate resolution purporting to authorize the transfers was void and that the transfers themselves were void. As a third cause of action International Church sought a decree to quiet title to the real estate in question.
 
 
 7
 California Church demurred to the complaint. The Superior Court sustained the demurrer without leave to amend. The Superior Court stated: "Plaintiff's complaint alleging breach of trust is barred by California Code Sec. 9142(c) and Protestant Episcopal Church v. Barker, 115 Cal.App.3d 599, 171 Cal.Rptr. 541 (1981)." An appeal from this judgment was dismissed on May 12, 1992, for failure of International Church to procure the timely filing of the record.
 
 
 8
 On February 5, 1993, International Church filed a complaint in the federal district court against California Church alleging the following:
 
 
 9
 On April 19, 1990, the president of International Church received a telephone call in Florida from Rolando Gonzalez in California. Gonzalez told the president that the City of Bell Gardens, California, was instigating a law suit against International Church for violation of certain housing ordinances. In order to protect International Church's assets in California, Gonzalez proposed that a transfer of these assets be made to an independent corporation. Gonzalez stated that he had retained David Bow Woo to represent International Church in connection with Bell Gardens' law suit and that Woo would dictate the necessary resolutions for creation of the new corporation. Woo did so. The officers of the corporation executed the resolution as dictated by Woo and delivered it to Gonzalez. On receipt of the resolution Gonzalez formed California Church so that it was totally independent of International Church, gave himself complete control over it and, still acting as an officer of International Church, executed deeds transferring International Church's real property in California to California Church; he also transferred all of International Church's bank deposits in California to California Church. On the completion of these transfers, Gonzalez resigned as an officer of International Church on September 27, 1990, "due to an unspecific religious doctrinal dispute." Not until November 13, 1990, did the president of International Church discover the transfers made by Gonzalez.
 
 
 10
 Gonzalez, according to the complaint's allegations, continued to represent to the public that California Church was "the regional branch" of International Church and continued to solicit donations in International Church's name and to use International Church's insignia, mark and uniforms; by reason of these solicitations California Church received donations averaging $300,000 per month.
 
 
 11
 After a recitation of these allegations International Church's federal complaint stated as its first claim that all of Gonzalez's representations in connection with the April 1990 corporate resolution, his story about the danger of losing International Church's property to Bell Gardens, and his claim that the transfer would assure International Church's continued control over its California assets were misrepresentations made with the intention of inducing International Church to rely upon them; that International Church relying on the fact that Gonzalez had been one of its officers and directors for over a decade justifiably relied on them, particularly as the transaction was said to have been advised by Woo who was represented to be acting as International Church's attorney. The first claim further alleged that all of the transfers to California Church made by Gonzalez were without any authorization by International Church. By reason of these misrepresentations and wrongful transfers, International Church alleged that California Church was unjustly enriched in the sum of at least $15,500,000.
 
 
 12
 As a second claim International Church alleged that the resolution of April 1990 was made under the mistaken belief that International Church would retain control of the assets; International Church sought restitution of the property transferred under this mistaken belief.
 
 
 13
 As a third claim International Church charged Gonzalez with fraud in his representations and intentionally concealing his secret intention to misappropriate its California properties. International Church sought damages in excess of $15,500,000 and punitive damages in an amount to be determined at trial.
 
 
 14
 As a fourth claim International Church asserted that at all relevant times prior to September 27, 1990, Gonzalez was an officer and director of International Church and owed it a duty to be loyal, truthful, and honest; his acts instead were characterized as oppressive, fraudulent, and malicious, subjecting him to damages in excess of $15,500,000 and punitive damages.
 
 
 15
 As a fifth claim International Church asserted that California Church's solicitations and use of International Church's name, insignia, mark and uniforms confused and deceived the public in California, Colorado, Arizona and New Mexico and thereby were in violation of the Lanham Act, 15 U.S.C. Sec. 1125(a). The damages were stated to be not ascertainable at this time, but substantial, and punitive damages were sought against Gonzalez. A sixth claim, pendent to the federal claims, asserted unfair competition by California Church by unlawful, unfair, fraudulent business practices and unfair, deceptive advertising in violation of California Business and Professions Code Sec. 17200.
 
 
 16
 International Church sought restitution of all the real property and funds transferred in April 1990, the profits and proceeds from the use of this property and funds, and in the alternative damages in excess of $15,500,000 and punitive damages.
 
 
 17
 California Church moved to dismiss on the grounds that the federal complaint was barred by res judicata and that there was another action pending in the state court on the same underlying causes of action. California Church also moved to dismiss the Lanham Act and California unfair business competition claim in that no business was involved.
 
 
 18
 On July 9, 1993, the district court dismissed the claim for violations of the Lanham Act and California unfair competition on the ground that no commerce was involved. The district court found the other claims barred by res judicata. The district court stated: "Under California's 'primary rights' theory of res judicata, see Slater v. Blackwood, 15 Cal.3d 791, 795-96, 126 Cal.Rptr. 225, 543 P.2d 593 (1975), this action is barred. See also Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th Cir. March 30, 1993); Berman v. Aetna Cas. & Sur. Co., 40 Cal.App.3d 908, 912, 115 Cal.Rptr. 566 (1974)." On November 18, 1993, the district court awarded sanctions against International Church in the sum of $16,312.50 for frivolously filing the claims that were barred by res judicata.
 
 
 19
 International Church appeals both the sanctions and the judgment of dismissal on the grounds of res judicata.
 
 ANALYSIS
 
 20
 As the Ninth Circuit decision cited by the district court observed, the Full Faith and Credit Act, 28 U.S.C. Sec. 1738, requires us to " 'give the same preclusive effect to a state-court judgment as another court of that State would give.' " Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364, quoting Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986). We, therefore, look to California law to determine the effect of the judgment against International Church entered by the Superior Court of Los Angeles County.
 
 
 21
 In Slater v. Blackwood, 15 Cal.3d 791, 795, 126 Cal.Rptr. 225, 226-27, 543 P.2d 593 (1975) the Supreme Court of California stated: "even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." In Slater the plaintiff, a minor, was injured while riding as a guest in a car and sought recovery under California's "guest statute"; after trial, judgment was entered for the defendant. Subsequently the plaintiff filed a new complaint based on the same accident seeking recovery on the basis of the defendant's negligence. This second suit was held barred by judgment in the first case.
 
 
 22
 Four years later the Supreme Court of California decided Agarwal v. Johnson, 25 Cal.3d 932, 160 Cal.Rptr. 141, 603 P.2d 58 (1979). Agarwal sued his employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., alleging discrimination and seeking back pay. Judgment was entered for the defendant. Meanwhile Agarwal had brought suit in the state court, alleging the same facts and seeking recovery for defamation and intentional infliction of emotional distress; he obtained a verdict in the state court. While the employer's appeal to the Supreme Court of California was pending, the federal judgment was entered and the employer moved under relevant California precedent to permit the filing of res judicata as a defense. The Supreme Court of California found the defense to be unavailing. The court explained: "under the 'primary rights' theory adhered to in California it is true there is only a single cause of action for the invasion of one primary right.... But the significant factor is the harm suffered, that the same facts are involved in both suits is not conclusive." The court held that although each case involved the same transaction, the harm suffered by Agarwal for which he was awarded judgment in the state case was distinct from the harm of employment discrimination; so there was no barrier created by the federal judgment. What Agarwal alleged as his state causes of action could have been stated as claims arising from the same transaction on which he sued in federal court; but the California Supreme Court took no notice of this overlap.
 
 
 23
 Applying these two cases, we find that "the harm suffered" for which International Church sought recovery in the Superior Court was the loss of assets impressed with a trust in favor of specific religious doctrines. This harm is distinct from the harms alleged in the federal court of unjust enrichment and fraud; and the punitive damages sought in this case are also significantly different from the recovery of property sought in the state case. Under Agarwal there is no barrier to International Church's complaint.
 
 
 24
 California Church argues that International Church knew all the facts it now alleges when it brought its complaint in the Superior Court; it should have alleged them then. California Church relies on Palomar, 989 F.2d 362. In that case the plaintiff filed a complaint in the San Diego Superior Court challenging a city's rent control ordinance. The city entered a general demurrer, which was sustained. The plaintiff appealed the dismissal, arguing its federal constitutional claims. The California Court of Appeal discussed these claims at length, but sustained the judgment in favor of the city. The plaintiff "then filed suit on essentially the same facts in the federal district court," arguing the same federal constitutional issues that had been "fully litigated in the state court proceedings." Id. at 363. We held: "In California, a judgment entered after the sustaining of a general demurrer is a judgment on the merits, and, to the extent that it adjudicates that the facts alleged do not establish a cause of action, it will bar a second action on the same facts." Id. at 364. Palomar has no application here where the facts alleged in the federal case are substantially different from those alleged in the Superior Court in Los Angeles and the claims now made have never been litigated.
 
 
 25
 California Church also refers to two other cases filed by International Church. In one of these, California Church was voluntarily dismissed without prejudice. In the other, a bishop of the International Church sued alleging that he was the presiding bishop of California Church. International Church did not bring the action but was found by the state court to be a real party in interest; judgment against International Church was entered on the ground of res judicata. International Church appealed to the California Court of Appeal. Because final judgment has not been entered in this action, it could not have affected res judicata in the district court in the instant case.
 
 
 26
 It is true that in Nakash v. Superior Court, 196 Cal.App.3d 59, 68, 241 Cal.Rptr. 578, 583 (1987), one intermediate appellate court stated that for purposes of res judicata the "analysis has shifted from identification of a primary right upon which only one claim is allowed to determination of the existence of a transaction involving a nucleus of facts upon which only one claim is allowed." This statement accurately described the approach adopted by the American Law Institute, Restatement of Judgments, Second Sec. 24, Comment b at 199 (1982). However, there is no indication that the Supreme Court of California has adopted this approach and, as has been recently pointed out, "wherever this perceived shift may have occurred, it is inconsistent with the controlling authority of the California Supreme Court." Branson v. Sun-Diamond Growers, 24 Cal.App.4th 327, 341 n. 6, 29 Cal.Rptr.2d 314, 321 n. 6 (1994). Agarwal remains good law. As Branson accurately explains: California has consistently applied the "primary rights theory," taken from John Norton Pomeroy, 1 Equity Jurisprudence (5th Edition 1941), "The Constituent Parts of Equity," Sec. 91, p. 120, according to which the same wrongful act may invade many different primary rights. Branson itself applied this principle. The agent of a corporation sued the corporation under Corporations Code Sec. 318(e)(4), which permits a corporation to indemnify its agent against a judgment based on an agent's reasonable good faith act on behalf of the corporation; judgment was entered against him in the Court of Appeal for the First District. The agent then brought suit against the corporation on claims involving the same transaction, seeking indemnification on the basis of equitable estoppel. This case was dismissed by the trial court on the ground of res judicata. The Court of Appeal reversed, holding that the primary right to seek a remedy for breach of a contract for indemnity was distinct from the primary right to seek authorization for indemnity under the Corporations Code. Similarly, in our case the right to seek damages for fraud and for unjust enrichment are primary rights different from the primary right to enforce a trust upon assets dedicated to a particular religious doctrine.
 
 
 27
 In concluding that the judgments of the district court must be reversed and the case remanded we cannot refrain from commenting on the extraordinary unhelpfulness of the briefing by both parties to this controversy. We suspect that the absence of citation of the controlling authority, Agarwal, to this court was also true of the briefing of the district court and contributed to its misimpression of California law.
 
 
 28
 The judgments of the district court dismissing the complaint and ordering sanctions are REVERSED; the case is REMANDED.
 
 
 
 *
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation