Filed 4/19/22  Bogue v. Sharp Memorial Hospital CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. BOGUE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SHARP MEMORIAL HOSPITAL, <br><br> Defendant and Appellant. | D077195 <br><br><br> (Super. Ct. No. 37-2017-00020636-CU-NP-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed.

Law Office of Michael A. Conger and Michael A. Conger for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, Robert G. Marasco, and Julian J. Lean for Defendant and Appellant.

Michael A. Bogue, M.D. is an anesthesiologist formerly employed by Anesthesia Service Medical Group, Inc. (ASMG).  ASMG is a professional medical corporation, which contracted with Sharp Memorial Hospital (Sharp)

to provide anesthesia services. After 14 years of employment with ASMG, in 2014, the corporation's board of directors voted not to renew Dr. Bogue's annual employment agreement. Shortly after, Dr. Bogue filed a complaint against ASMG in San Diego Superior Court alleging discrimination, harassment, wrongful termination, and retaliation after he reported unsafe conditions in Sharp's facilities. ASMG compelled the litigation to arbitration under its agreement with Dr. Bogue. The arbitrator found in favor of ASMG and the award was confirmed in the trial court, and by this court on appeal.

After the arbitration hearings and just before the arbitrator issued his decision, Dr. Bogue brought a separate suit against Sharp alleging a violation of Health and Safety Code section 1278.5,[1] which protects whistleblowers in the healthcare industry, and asserting claims for intentional interference with contractional relations, intentional interference with prospective economic relations, and negligent interference with contractual relations. Sharp filed an unsuccessful motion for summary judgment of Dr. Bogue's claims based on a statute of limitations defense.

Before trial, Sharp renewed its statute of limitation defense in a motion for judgment on the pleadings and brought a motion in limine to bifurcate the trial to address its res judicata defense first. Sharp argued Dr. Bogue's claims were precluded by the doctrine of claim preclusion as a result of the arbitrator's award against ASMG. The trial court denied the motion for judgment on the pleadings and granted the motion in limine to bifurcate the trial. After the first trial phase, tried to the court through declarations, various exhibits, and cross-examination of the two defense witnesses, the

---

[1]     Subsequent undesignated statutory references are to the Health and Safety Code.

court found in favor of Sharp, concluding Dr. Bogue's claims were barred by claim preclusion.  Thereafter, judgment was entered in favor of Sharp.

On appeal, Dr. Bogue asserts the court erred by finding the claims were barred by the doctrine of claim preclusion because (1) Sharp was not in privity with ASMG and (2) his claims against Sharp do not involve the same primary right as the claims asserted against ASMG.  Dr. Bogue also argues his due process rights were violated by the court's ruling and that the court erred by basing its decision on inadmissible hearsay evidence.  Sharp has also appealed the judgment as a protective measure, asserting the court erred by denying its motions for summary judgment and judgment on the pleadings.  We agree with Sharp that the trial court properly found Dr. Bogue's claims are barred and affirm the trial court's judgment.  In light of this determination, we dismiss Sharp's protective appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND

Dr. Bogue completed his medical training around 2000 and was first employed by ASMG in February of that year.  He entered into successive one year contracts with ASMG until 2014 when its board voted not to renew his employment.  ASMG is a medical corporation that employs approximately 250 anesthesiologists, of those about 225 are shareholders of the corporation.

ASMG contracts with hospitals and other operating facilities in San Diego County.  Because the corporate practice of medicine is prohibited in California, Sharp (and all other hospitals) cannot employ physicians directly.  Rather, Sharp contracts with physicians for their services and for the oversight of the medical services they provide.  Sharp's contracted medical staff adopts bylaws to govern the medical operations, including criteria for medical privileges at Sharp facilities and the governance of the medical staff.

3

Dr. Bogue's employment agreement with ASMG required him to obtain and maintain medical staff privileges at any hospital where ASMG designated Dr. Bogue to work, and to comply with the call schedule at those facilities.[2] ASMG contracted with Sharp to provide on-call anesthesia services in its operating rooms at Sharp Memorial Hospital and at its Outpatient Pavilion. The contract required ASMG to provide daily operating room scheduling management, anesthesia coverage scheduling, clinic staffing, and coverage of anesthesia call obligations, as well as promotion and support of operating room efficiency.

Dr. Bogue was assigned by ASMG to Sharp in 2003. Beginning in 2004, Sharp began fielding complaints about Dr. Bogue from nursing staff and other doctors. The complaints focused on negative interactions between Dr. Bogue and others, especially related to Dr. Bogue's manipulation of the schedule and unprofessional manner, and on his complaints to a software vendor in 2007 about Sharp's implementation of a new system to be used by ASMG anesthesiologists in its operating rooms.

As noted, in 2014, ASMG's board of directors voted not to renew Dr. Bogue's employment contract. In advance of the vote, ASMG's general counsel and human resources manager, Glenn Buberl, recommended ASMG terminate Dr. Bogue because of "sustained difficult interactions with surgical team members and colleagues, including his manipulation of the call schedule." Buberl also explained that ASMG had provided counseling to Dr. Bogue that had not changed his behavior, and detailed documented problems with Dr. Bogue from 2004 through late 2013.

---

[2] Despite his termination by ASMG, Dr. Bogue maintains his privileges to practice at Sharp.

*A. Litigation Against ASMG*

Shortly after ASMG terminated Dr. Bogue, he retained counsel and sent a demand letter to ASMG asserting his termination was unlawful retaliation for the reporting of various patient safety concerns and medical billing fraud. In addition, Dr. Bogue claimed he was the victim of harassment and discrimination based on his sexual orientation.

After ASMG failed to respond to the demand, Dr. Bogue filed suit in San Diego Superior Court against ASMG and Kris Bjornson, M.D., an ASMG shareholder and the Medical Director at Sharp Memorial Hospital, where Dr. Bogue practiced. Dr. Bogue alleged Dr. Bjornson, Thomas Karagianes, M.D. (the medical director of the operating rooms at the Outpatient Pavilion), and others dismissed his patient safety complaints and billing fraud allegations, and instead targeted Dr. Bogue as a trouble-maker, eventually firing him. Dr. Bogue also asserted he had been subjected to harassment and discrimination from members of the medical staff.

Dr. Bogue alleged various claims against ASMG. He asserted his former employer (1) violated section 1278.5 and Labor Code section 1102.5 by terminating Dr. Bogue for bringing forward his concerns of unsafe patient care and conditions, (2) violated Government Code section 12653 by retaliating against him for reporting fraudulent billing practices, (3) wrongfully discharged him in violation of public policy, (4) engaged in unlawful discrimination and harassment based on his sexual orientation in violation of the California Fair Housing and Employment Act (Gov. Code, § 12940), and (5) engaged in unlawful intentional interference with prospective economic advantage by interfering with his relationship with another Sharp hospital. Dr. Bogue's complaint sought general and special

damages, punitive damages under Civil Code section 3294, and reinstatement of his employment.

In response to the complaint, ASMG brought a motion to compel arbitration in accordance with Dr. Bogue's employment contract. Over Dr. Bogue's opposition, the trial court granted the motion and the parties proceeded to arbitration.[3]

During the arbitration, the parties conducted extensive discovery. Dr. Bogue conducted depositions of 28 witnesses, including 19 Sharp employees and members of its physician staff. The arbitration took place over 13 evidentiary sessions in February and March of 2017. 36 witnesses were examined during the sessions. On July 7, 2017, the arbitrator issued a statement of decision rejecting all of Dr. Bogue's claims. In particular, the arbitrator found that Dr. Bogue had never raised any concerns over the safety issues he outlined in his complaint, and thus there was no retaliatory conduct by ASMG.

B. *Litigation Against Sharp*

After the arbitration hearings were complete, and one month before the arbitrator's decision was issued, Dr. Bogue filed the underlying complaint in this case against Sharp. The complaint alleged just one cause of action for violation of section 1278.5. Dr. Bogue later successfully moved to amend the complaint to add claims for intentional interference with contractional relations, intentional interference with prospective economic relations, and negligent interference with contractual relations.

---

[3]     The court did not compel arbitration of Dr. Bogue's claim for intentional interference with prospective economic advantage. Dr. Bogue subsequently dismissed that claim.

In his complaint, Dr. Bogue detailed the safety complaints he made to Sharp's medical staff and administrative personnel, which mirrored those asserted in his complaint against ASMG. In both cases, Dr. Bogue alleged that in Sharp's operating rooms, staff had reused surgical tape, failed to take sufficient precautions to avoid inadvertent drug swaps and cross-contamination of drugs, used unsafe software during procedures, and used an unsafe medication because a member of the medical staff was a paid consultant for the medication's manufacturer. As in the prior case, he claimed that as a result of raising patient safety concerns, Sharp's medical staff and administrators made false reports to ASMG ultimately resulting in his termination. He also contended that his complaint about the software he viewed as unsafe caused Sharp to tortiously interfere with his ASMG contract, likewise resulting in his termination.

After the parties engaged in discovery, Sharp brought a motion for summary judgment asserting Dr. Bogue's claims were barred by the applicable statutes of limitation. The trial court denied the motion, concluding the statutes were potentially tolled by the discovery rule and a question of fact remained as to when Dr. Bogue became aware of Sharp's involvement in his termination from ASMG.[4]

Before trial, Sharp renewed its statute of limitations defense to Dr. Bogue's claims by filing a motion for judgment on the pleadings. It argued that Dr. Bogue's own pleadings showed he was aware of Sharp's involvement in the issues leading to his termination three and half years before filing his complaint. The trial court again rejected Sharp's arguments, finding that it had not conclusively shown that Dr. Bogue had knowledge of

---

[4] After the denial of its motion for summary judgment, Sharp petitioned this court for a writ of mandate, which was summarily denied.

7

Sharp's involvement in his termination at a time outside the statute of limitations.

Simultaneously with its motion for judgment on the pleadings, Sharp moved to bifurcate the trial with the first phase addressing only its statute of limitations and res judicata defenses. The court denied the motion with respect to the statute of limitations, finding bifurcation of the issue would not result in any efficiency. With respect to the issue of res judicata, the court requested additional briefing on specific questions and set a further hearing.

At the hearing, the parties agreed that the issue of res judicata was properly decided by the court, not the jury. The parties argued their positions on bifurcation, and at the end of the hearing the court asked for additional briefing on the issues of privity between ASMG and Sharp, the impact of the arbitration agreement on that issue, and if the arbitrator had determined Sharp's involvement in Dr. Bogue's termination. The parties submitted the requested additional briefing, and the court issued a minute order granting bifurcation on the issue of claim preclusion and scheduling a conference to set a timeline for trying the first phase.[5]

Thereafter, the parties submitted further briefing, and Sharp submitted the declarations of its CEO and ASMG's general counsel, Buberl, as well as an attorney declaration, each attaching documentary evidence. Dr. Bogue objected to Sharp's declarations and exhibits, arguing they were inadmissible hearsay. Sharp filed a response to the objection.

At the next reported hearing, the court stated it was ready to hear the evidentiary portion of the trial on Sharp's affirmative defense of claim preclusion. Dr. Bogue's counsel moved for judgment on defense under Code

[5]     The reporter's transcript for the hearing set by that order does not appear in the appellate record.

8

of Civil Procedure section 631.8, asserting Sharp's res judicata defense failed because it had submitted only inadmissible hearsay declarations in support. Sharp's counsel responded that Dr. Bogue's motion was meritless because the parties had stipulated to a trial on the briefs and declarations, with an agreement that Dr. Bogue could cross-examine the declarants. The court deferred ruling on the motion until it issued its ruling on the merits.

Dr. Bogue's counsel proceeded to cross-examine Sharp's two witnesses. The parties then gave closing statements, and the court took the matter under submission. Thereafter, the court issued a statement of decision finding Dr. Bogue's claims against Sharp were barred by the doctrine of claim preclusion. The court's order states the "parties agreed [the first phase] of the trial could be tried to the court without a jury and largely through briefs and exhibits." The court then found that the judgment against ASMG in the arbitration was final, that Sharp was in privity with ASMG for purposes of Dr. Bogue's claims, and that his claims against Sharp involved the same primary right at issue in the ASMG arbitration. In accordance with these findings, the trial court determined the elements of claim preclusion were satisfied and that Dr. Bogue's four claims against Sharp were precluded.

Thereafter, the court entered judgment in favor of Sharp. Dr. Bogue appealed and Sharp filed a cross-appeal challenging the trial court's orders denying its motions for summary judgment and judgment on the pleadings.

DISCUSSION

I

*Dr. Bogue's Appeal*

Dr. Bogue challenges the trial court's determination that his claims are barred. He argues the court erred both by finding privity between ASMG and Sharp, and by finding the same primary right at issue in the two cases.

9

Dr. Bogue further asserts that his due process rights were violated by the court's ruling.  Finally, Dr. Bogue contends the court erred by admitting hearsay evidence in the form of witness declarations and exhibits.  As we shall explain, we reject Dr. Bogue's arguments.

A

*Legal Principles*

*1. Standard of Review*

The applicability of claim preclusion is a question of law that we review de novo.  (*Samara v. Matar* (2017) 8 Cal.App.5th 796, 803.)  However, when the defense is determined at trial, the court's factual findings in support of its determination that claim preclusion applies are reviewed for substantial evidence.  (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 232.)

*2. Res Judicata*

" ' "Res judicata" describes the preclusive effect of a final judgment on the merits.  Res judicata, [also known as] claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.  Collateral estoppel, or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." [Citation.]  Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action.' " (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 671 (*Cal Sierra*), quoting *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897.)  "The doctrine [of res judicata] promotes judicial economy and avoids piecemeal litigation by preventing a plaintiff from ' " 'splitting a single cause

of action or relitigat[ing] the same cause of action on a different legal theory or for different relief.' " ' " (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 727 (*Ivanoff*).)

The California Supreme Court has noted confusion in the case law surrounding the doctrine of res judicata: "[O]ur terminology in discussing the preclusive effect of judgments has been inconsistent and may have caused some confusion. We have frequently used 'res judicata' as an umbrella term encompassing both claim preclusion and issue preclusion, which we described as two separate 'aspects' of an overarching doctrine. [Citations.] Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ' " 'secondary aspect' " ' historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824 (*DKN Holdings*).) "We will follow the current practice to use the term 'claim preclusion' to describe the primary aspect of the res judicata doctrine and the term 'issue preclusion' to denote collateral estoppel. (See *DKN Holdings, supra*, 61 Cal.4th at pp. 823–824.) The two types of preclusion have different requirements." (*Cal Sierra, supra*, 14 Cal.App.5th at p. 671.)

" '*Claim preclusion* "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether. [¶] *Issue preclusion* prohibits the relitigation of issues argued and decided in a

11

previous case, even if the second suit raises different causes of action.' " (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) This case concerns only claim preclusion, and only the first and second elements are in dispute. The parties agree the ASMG arbitration is a final judgment for purposes of the doctrine.

*3. Privity*

" 'Since [claim preclusion] bars a subsequent action on the same claim between, not only parties to the first action, but also their privies, we must determine who qualifies as a privy to a prior action. … "Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. [Citation.] A party in this connection is one who is 'directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment." ' " (*Cal Sierra, supra*, 14 Cal.App.5th at p. 672.)

The concept of "privity" has expanded over time. Historically, the California Supreme Court described the principle of privity in limited terms: " 'A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.' " More recently, however, courts have embraced a somewhat broader, more practical concept of privity. " '[T]o maintain the stability of judgments, insure expeditious trials,' prevent vexatious litigation, and 'to serve the ends of justice,' courts are expanding the concept of privity beyond the classical definition to relationships ' "sufficiently close to afford application of the principle of preclusion." ' " (*Cal Sierra, supra*, 14 Cal.App.5th at p. 672.)

Under this modern definition, "privity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should

12

reasonably have expected to be bound' by the first suit. [Citation.] A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's ' " 'virtual representative' " ' in the first action." (*DKN Holdings, supra*, 61 Cal.4th at p. 826.)

"Thus, for purposes of privity, ' "[t]he emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion." ' [Citation.] Put another way, privity, ' "as used in the context of [claim preclusion], does not embrace relationships between persons or entities, but rather it deals with a person's relationship *to the subject matter of the litigation.*" ' " (*Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 277.)

*4. Primary Rights Theory*

In order for claim preclusion to apply, in addition to privity, the defense must establish the requisite identity of interest in the causes of action in the prior final and the present litigation. " 'Whenever a judgment in one action is raised as a bar to a later action under [claim preclusion], the key issue is whether the same cause of action is involved in both suits. California law approaches the issue by focusing on the 'primary right' at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.' " (*Cal Sierra, supra*, 14 Cal.App.5th at p. 675.)

"Under the 'primary rights' theory adhered to in California, there is only a single cause of action for the invasion of one primary right and the

13

harm suffered is the significant factor.  [Citation.]  A primary right is the right to be free of a particular injury.  [Citation.]  'The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.' (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 [(*Boeken*)].)" (*Cal Sierra, supra*, 14 Cal.App.5th at pp. 675–676.)

A prominent treatise explains the primary right theory in this way: " 'Every command or rule of the private civil law creates a primary right in one individual, and a primary duty corresponding thereto resting upon another person or number of persons.  These rights and duties are, of course, innumerable in their variety, nature, and extent.  If a person upon whom a primary duty rests towards another fails to perform that duty, and thereby violates the other's primary right, there at once arise the remedial right and duty.  The one whose primary right has been violated immediately acquires a secondary right to obtain an appropriate remedy from the wrong-doer, while the wrong-doer himself becomes subjected to the secondary duty of giving or suffering such remedy. …  It is plain from this analysis that the nature and extent of remedial rights and duties, and of the remedies themselves, must depend upon two distinct factors taken in combination, namely, the nature and extent of the primary rights which are violated, and the nature and extent of the wrongs in and by which the violation is effected.  The same primary right may be broken by many kinds of wrong-doing; and the same wrongful act or default may invade many different rights.' (1 Pomeroy, Equity Jurisprudence (5th ed. 1941) The Constituent Parts of Equity, § 91, p. 120, fn. omitted; see also Pomeroy, Code Remedies (5th rev. ed. 1929) Introduction, § 2, p. 2.)" (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 341 (*Branson*).)

14

B

*Analysis*

*1. Privity Exists Between Sharp and ASMG*

Critical to our analysis is the symbiotic relationship between ASMG and Sharp as it relates to Dr. Bogue's claims against them. Unlike other business relationships in different settings, ASMG and Sharp are dependent upon one another for the operation of their businesses. Without anesthesiologists, Sharp's operating room facilities cannot function. Likewise, without operating room facilities, ASMG's physicians cannot perform their specialized medical services. Of particular importance in this case is that the alleged safety concerns that form the basis for Dr. Bogue's claims were the joint responsibility of Sharp and ASMG under their agreements. For this reason, we agree with Sharp that its liability is derivative of ASMG's liability for the purposes of Dr. Bogue's four claims and that it is in privity with ASMG for this narrow purpose.

The trial court found that privity existed between Sharp and ASMG because "the conditions at Sharp Memorial Hospital and Sharp Outpatient Pavilion were intrinsic to Dr. Bogue's case against ASMG. Those conditions, as they relate to patient safety concerns, and the retaliation for reporting those issues, are … the subject matter in the instant lawsuit." Specifically, the trial court pointed to (1) ASMG's and Sharp's dual employment of Dr. Bjornson, Sharp's medical director for the hospital and board member of ASMG, and Dr. Karagianes, Sharp's medical director for its Outpatient Pavilion and ASMG board member; (2) the fact that both cases, at base, required a determination of whether the patient safety concerns raised by Dr. Bogue were valid; and (3) the fact that Sharp's interests were represented and aligned with ASMG's interests in the arbitration because both parties

15

sought to show that Dr. Bogue did not raise any patient safety concerns before his termination.

The trial court also determined that Dr. Bogue's claims against Sharp were derivative of his claims against ASMG because "but for [his] employment with ASMG, Sharp would not be liable for his causes of action…." The court accurately noted that Sharp is dependent on ASMG because it cannot practice medicine itself and the "handling of patient safety concerns at Sharp Memorial Hospital and the Outpatient Pavilion were expressly entrusted to ASMG shareholders by Sharp."

We agree with the trial court's analysis of privity and the factual findings it made to support that conclusion were either undisputed, or amply supported by the evidence. The underlying facts are the same for the claims in both cases. Like the basis for his wrongful termination and whistleblower claims in the ASMG case, Dr. Bogue alleges Sharp is liable under section 1278.5 based on Dr. Bogue reporting his alleged patient safety concerns to Sharp and then Sharp retaliating by "making false reports to his employer," ASMG, which he claims led to his termination by ASMG. As the trial court found, without ASMG's employment of Dr. Bogue, Sharp could have no liability in this case.

The relationship between ASMG and Sharp bears a strong resemblance to the parties found to be in privity in *Cal Sierra*. There, Cal Sierra Development, Inc. (Cal Sierra), a gold mining company, and Western Aggregates LLC (Western) had an agreement over the rights to a certain property. (*Cal Sierra, supra*, 14 Cal.App.5th at p. 668.) Cal Sierra had superior rights to mine precious metals, and Western had the subordinate rights to the surface estate. (*Ibid*.) Western licensed its rights to an asphalt contractor, George Reed, Inc. (Reed), whose plant operations interfered with

16

Cal Sierra's superior mining rights. Cal Sierra brought an arbitration against the licensor Western for the damage. (*Id*. at p. 669.) The scope of the arbitration was limited to " 'the parties' respective rights and obligations related to the current location of the [Reed] asphalt plant.' " (*Ibid*.) The arbitrator found in Cal Sierra's favor on its breach of contract claim, and for Western on Cal Sierra's other claims for trespass, nuisance, and conversion. (*Ibid*.)

Thereafter, Cal Sierra sued the licensee Reed for trespass, intentional interference with contract and negligent interference with economic relations. (*Cal Sierra, supra*, 14 Cal.App.5th. at p. 670.) Reed asserted the defense of claim preclusion, which was tried to the court in a bifurcated first phase. (*Ibid*.) The trial court found that Cal Sierra's claims were foreclosed by the prior arbitration on the basis of claim preclusion. (*Id*. at p. 671.) Cal Sierra appealed, and the Court of Appeal agreed with the trial court that privity existed for purposes of claim preclusion. (*Ibid*.)

The Court of Appeal held that "Reed's liability … is derivative of that of Western Aggregates because Reed acted *only* pursuant to the license agreement with Western Aggregates in installing the asphalt plant. Indeed, it was Western Aggregates who *selected* the site for the plant." (*Cal Sierra, supra*, 14 Cal.App.5th. at p. 675.) The court further explained: "The subject matter of the litigation here was the same as that at the center of the arbitration dispute: the placement of the asphalt plant and whether it infringed on Cal Sierra's mining rights. As to this issue, Western Aggregates and Reed … had an identical interest; all were adversely and similarly impacted by the propriety (or impropriety) of the plant's location. [Footnote omitted.] Reed's right to occupy the property was solely dependent on its

17

license agreement; Reed acted with Western Aggregates' consent and Western Aggregates selected the exact location." (*Id*. at p. 674.)

The relationship between Western and Reed in *Cal Sierra* is analogous to the relationship between Sharp and ASMG. Here, but for ASMG's contractual relationship with Sharp, Dr. Bogue would not have any claim against Sharp. Without the Sharp facilities for anesthesiologists to perform their services, the alleged patient safety concerns would not exist. And Dr. Bogue would not have claims against ASMG based on his reporting of those concerns. Conversely, without his employment by ASMG and its provision of services to Sharp, Dr. Bogue would not have the present claims against Sharp. Like Reed's liability based on its agreement with Western, Sharp's liability is derivative of ASMG's based on their contractual relationship.

As in *Cal Sierra*, despite differing claims "[t]he subject matter of the litigation here was the same as that at the center of the arbitration dispute …." (*Cal Sierra, supra*, 14 Cal.App.5th at p. 674.) As to the primary issue, whether Dr. Bogue reported patient safety concerns to Sharp and/or ASMG, Sharp and ASMG "had an identical interest." (*Ibid*.) For purposes of both lawsuits, Sharp and ASMG were invested in whether Dr. Bogue actually made patient safety complaints and whether the complaints were valid. Contrary to Dr. Bogue's assertion that "[n]one of the liability asserted against Sharp is dependent on any contract Sharp has with ASMG," Sharp's liability here is dependent on its agreements with ASMG because without that relationship, none of Dr. Bogue's claims would exist.

Dr. Bogue relies on *DKN Holdings* to argue the trial court erred by concluding Sharp's liability is derivative of ASMG's liability. *DKN Holdings*, however, analyzed whether joint and several liability alone could create privity for purposes of claim preclusion. The court held it did not, rejecting

18

the defendant's arguments that under the doctrine of res judicata a prior judgment against a co-lessee, who defaulted on the judgment, barred a later claim by the lessor against another co-lessee. (*DKN Holdings, supra*, 61 Cal.4th at p. 823.) After first clarifying that parties jointly and severally liable can be sued in separate lawsuits, the court found the lessor's later claim against the co-lessee not originally sued could proceed because the co-lessees were not in privity for purposes of claim preclusion. (*Id*. at pp. 820–822, 825.) The later-named defendant "never contended that he and the other lessees should be considered the same party" and the lower courts erred by conflating claim preclusion, which requires privity, with issue preclusion, which does not. (*Id*. at pp. 826–827.)

In reaching this conclusion, the court distinguished the cases involving derivative liability relied on by the defendant to support his argument that claim preclusion barred the plaintiff's claims. (See *DKN Holdings, supra*, 61 Cal.4th at pp. 827–828 ["Derivative liability supporting preclusion has been found between a corporation and its employees (*Sartor v. Superior Court* (1982) 136 Cal.App.3d 322, 328; *Lippert* [*v. Bailey* (1966) 241 Cal.App.2d 376,] 382), a general contractor and subcontractors (*Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 757), an association of securities dealers and member agents (*Brinton* [*v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550,] 557–558 [(*Brinton*)]), and among alleged coconspirators (*Richard B. LeVine, Inc.* [*v. Higashi* (2005) 131 Cal.App.4th 566,] 579 [(*LeVine*)].].") *DKN Holdings* does not conclude, as Dr. Bogue suggests, that only the specific types of derivative liability discussed in these cases can create privity. Rather, *DKN Holdings* simply rejects the assertion "that joint

19

and several liability under a contract" is equivalent to "derivative liability." (*DKN Holdings, supra*, 61 Cal.4th at p. 828.)[6]

Dr. Bogue also argues that there is no privity between Sharp and ASMG because in the arbitration ASMG took a position adverse to Sharp. In support of this argument he points to a single statement in the arbitrator's statement of decision and ASMG's closing arbitration brief. Dr. Bogue, however, mischaracterizes the context and relevance of these statements. In the portion of the arbitration decision he cites, the arbitrator is discussing whether ASMG is a "health facility" for purposes of the whistleblower statute. In concluding it is not, he states "[n]o evidence has been provided to me showing that ASMG is an operational component of Sharp." This statement is related only to the arbitrator's determination that ASMG is not a "facility." It is not dispositive of whether ASMG and Sharp have privity for purposes of claim preclusion.

The statements Dr. Bogue cites from ASMG's closing arbitration brief, likewise, do not show an absence of privity for purposes of the claim preclusion analysis. Rather, in the portion of its brief discussing whether Dr. Bogue established he reported potential MediCal fraud, ASMG noted that Dr. Karagianes was not Dr. Bogue's ASMG supervisor at the relevant time, but rather held only a leadership position with the hospital. Similarly, in response to Dr. Bogue's sexual harassment allegations, ASMG's closing brief asserted Dr. Bjornson was not Dr. Bogue's supervisor at ASMG at the time of the alleged sexual harassment and held only a supervisory position for Sharp. These assertions by ASMG in the arbitration proceeding do not upset

---

6   The cases *DKN Holdings* distinguished also do not undermine our conclusion. If anything, they support our holding because, like here, they involve situations where privity is found based on derivative liability.

our determination that Sharp and ASMG were privies for purposes of Dr. Bogue's claims concerning his alleged patient safety concerns.

2. *Dr. Bogue's Claims Involve the Same Primary Right as That Previously Arbitrated*

For all four of Dr. Bogue's claims here, the trial court found the same primary right was at issue in the arbitration:  the right to be free from any retaliation for reporting patient safety concerns.  As discussed, " '[w]henever a judgment in one action is raised as a bar to a later action under [claim preclusion], the key issue is whether the same cause of action is involved in both suits. … [I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.' [Citation.]  [¶] … [T]here is only a single cause of action for the invasion of one primary right and the harm suffered is the significant factor.  [Citation.] A primary right is the right to be free of a particular injury.  [Citation.]  'The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.' " (*Cal Sierra, supra*, 14 Cal.App.5th at pp. 675–676.)

Dr. Bogue argues the whistleblower statute creates a different primary right than the primary right at issue in his arbitration with ASMG.  He asserts that the legislature's enactment of section 1278.5 "created a new, cumulative, primary duty and right," separate from any other right to protection from retaliation for reporting safety concerns.  This argument is not well-taken.

"Section 1278.5 states, 'The Legislature finds and declares that it is the public policy of the State of California to encourage patients, nurses,

21

members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions.' (§ 1278.5, subd. (a).) To that end, section 1278.5 prohibits a health care facility from 'discriminat[ing] or retaliat[ing], in any manner, against a patient, employee, member of the medical staff, or any other health care worker of the health facility because that person' has '[p]resented a grievance, complaint, or report to the facility.' (§ 1278.5, subd. (b)(1)(A).) … Thus, to establish a prima facie case under section 1278.5, a plaintiff must show that he or she (1) presented a grievance, complaint, or report to the hospital or medical staff (2) regarding the quality of patient care and; (3) the hospital retaliated against him or her for doing so. (§ 1278.5, subd. (b)(1).)"[7] (*Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 178–179.)

The basis for Dr. Bogue's claim under section 1278.5, as set forth in his amended complaint, is that he made various complaints about patient safety, and as a result "[m]embers of Sharp's medical staff and the administrative personnel unlawfully discriminated and retaliated against Dr. Bogue … by making false reports to [ASMG.]" The primary right at issue in this claim, as the trial court found, is Dr. Bogue's "right to be free from any retaliation for reporting patient safety concerns." The harm suffered that Dr. Bogue seeks

---

[7] "In addition to providing that a violation of the section 'shall be subject to a civil penalty of not more than twenty-five thousand dollars' to be assessed and recovered through an administrative process (§ 1278.5, subd. (b)(3)) and that a willful violation constitutes a misdemeanor (§ 1278.5, subd. (f)), section 1278.5–in subdivision (g)–authorizes an employee, a health care worker, or a member of a medical staff who has been discriminated against in violation of section 1278.5 to obtain remedies in a civil judicial action." (*Shaw v. Superior Court* (2017) 2 Cal.5th 983, 996, fns. omitted (*Shaw*).)

22

redress for is the same in both cases: the retaliation that resulted from the alleged "false reports" to ASMG by Sharp for reporting the same alleged safety complaints. (See *Boeken, supra*, 48 Cal.4th at p. 798 ["The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced."].)

The claims Dr. Bogue brought against ASMG, both the violation of Labor Code section 1102.5 and wrongful termination for retaliation, were based on his alleged reporting of the *identical* safety concerns.[8] The fact that Dr. Bogue seeks relief for the violation of that right under a different mechanism, i.e. section 1278.5, does not show he seeks redress for the violation of a different primary right. (*Boeken, supra*, 48 Cal.4th at p. 798.) Dr. Bogue had a full opportunity to litigate the cause of action. The arbitrator rejected Dr. Bogue's claim that his termination was in any way related to his alleged safety concerns about the software being tested at Sharp's facilities or his alleged reporting of other patient safety concerns. Specifically, the arbitrator found Dr. Bogue was not credible and that he had not reported any patient safety concerns before his termination. Because of these findings, the arbitrator concluded there was no retaliation against Dr. Bogue. This determination encompassed the same primary right that

---

8    Under Labor Code section 1102.5, "an employer may not retaliate 'against an employee for disclosing information … to a government or law enforcement agency [or] to a person with authority over the employee … if the employee has reasonable cause to believe that the information discloses a violation of [a] state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.' (Lab. Code, § 1102.5, subd. (b).)" (*Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 591.)

forms the basis for Dr. Bogue's claims in this case against Sharp. Because the primary right at issue was not violated, neither defendant can be liable for the violation of that right. (See *LeVine, supra*, 131 Cal.App.4th at p. 576 ["But if plaintiff's primary right is not violated at all, no defendant is liable."].)

Dr. Bogue makes much of the fact that the arbitrator did not consider the conduct of Janie Kramer, a Sharp administrator he alleges wanted him fired after he raised patient safety concerns about operating room software in 2007 that Sharp was piloting at that time. However, the software issue was thoroughly examined by the arbitrator in his statement of decision, and he concluded that there was no retaliation related to Sharp's reporting of Dr. Bogue's complaints to ASMG, which were made directly to the software vendor.[9] We reject Dr. Bogue's argument that the failure of the arbitrator to mention the Sharp administrator by name shows a different primary right was involved in the arbitration.

Dr. Bogue also argues that subdivision (m) of section 1278.5 precludes claim preclusion. The provision states: "This section does not abrogate or limit any other theory of liability or remedy otherwise available at law." (§ 1278.5, subd. (m).) In support of this argument Dr. Bogue cites *Shaw, supra*, 2 Cal.5th 983. In *Shaw*, the Supreme Court held that the existence of subdivision (m) made clear that the plaintiff's parallel claim for damages

---

[9] The arbitrator explained that after Dr. Bogue spoke to the vendor, it communicated to Sharp that additional training for the software might be appropriate. Kramer's disappointment with Dr. Bogue not communicating first with Sharp was relayed to ASMG, which ASMG viewed as jeopardizing its relationship with Sharp. The arbitrator concluded that ASMG's concerns about Dr. Bogue's actions and their business impact on the organization vis a vis Sharp were valid, and there was no improper retaliation as a result of this situation.

under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, based on the violation of section 1278.5, was permissible. Because the *Tameny* claim afforded the plaintiff a right to a jury, and the claims were based on the same underlying conduct and violation of the law, the court held it did not need to reach the issue of whether the state constitution separately afforded the plaintiff the right to a jury trial under section 1278.5. (*Shaw,* at pp. 1004–1005.) The *Shaw* decision is not related to claim preclusion and does not show that subdivision (m) creates a new primary right, distinct from the retaliation claims rejected by the arbitrator. As Sharp states, subdivision (m) does not limit claims, but it also "does not provide the right to bring a duplicative, successive lawsuit."[10]

We also agree with Sharp that Dr. Bogue's tort claims are based on the invasion of the same primary right—to be free of retaliation for reporting

---

[10] The other cases Dr. Bogue relies on are distinguishable. The cases involve situations where, although the earlier and later claims are based on the same wrongful conduct, different distinct primary rights were at issue, or the legislature has specified what preclusive effect a judicial determination will have. (See *Branson, supra*, 24 Cal.App.4th at pp. 343–344 [Corporations Code section 317 affords corporate agent the right to seek authorization for indemnity against an adverse judgment, separate and distinct from an agent's contractual rights to indemnity]; *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1172 [claims for workers' compensation, a "statutory right to prompt, certain compensation for all work-related injuries regardless of fault," involves a separate primary from the "common law right to be free of … employer's negligence in maintaining [the] work environment"]; *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 955 [racial discrimination claim under federal civil rights law involves a different primary right than claims for defamation and intentional infliction of emotional distress because different harms are suffered by plaintiff]; and *Ivanoff, supra*, 9 Cal.App.5th at pp. 728–729 [federal statutory right to full disclosure of material terms of home mortgage distinct primary right from earlier litigated right to enforce the terms of the homeowner's contractual agreement with the mortgage bank].)

patient safety concerns. When Dr. Bogue moved to amend his complaint to add these claims he stated explicitly they were based on "the same operative facts of the existing cause of action for violation of Health and Safety Code section 1278.5." Although we agree with Dr. Bogue that these are not claims that could be brought against ASMG, this alone does show the claims involve a different primary right.

Dr. Bogue argues in his reply brief that he is "pursuing his primary right to interference-free performance of a contractual obligation, and also not to have his prospective economic benefit of future contracts with ASMG interfered with through wrongful conduct." However, the wrongful conduct underlying each of these claims is the alleged retaliation for Dr. Bogue's reporting of patient safety concerns. In his claims for intentional interference with contract and intentional interference with prospective economic relations, Dr. Bogue alleges Sharp made "unjustified derogatory comments (*which were in reality patient safety complaints regarding computer software*)" in violation of section 1278.5 to disrupt his contract. (Italics added.) For his negligent interference claim, Dr. Bogue alleges without elaboration that Sharp's conduct "was a substantial factor" in causing him harm.

Like the whistleblower claim, the factual basis for these three claims is Dr. Bogue's assertion that his termination was in retaliation for reporting the same patient safety concerns that were fully litigated in the arbitration with ASMG. All four claims arose from the alleged violation of the same primary right. Critically, the alleged harm suffered by Dr. Bogue was the loss of his employment with ASMG, a central fact supporting the trial court's determination that the claims are based on a violation of the same primary right. (See *Branson, supra*, 24 Cal.App.4th at pp. 340–341) [" 'the "cause of action" is based upon the harm suffered, as opposed to the particular theory

26

asserted by the litigant. … Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' "].)

Finally, Dr. Bogue asserts that a different primary right is at issue because the arbitrator agreed with ASMG's argument "that Dr. Karagianes and Dr. Bjornson—Sharp medical directors who secretly complained to ASMG about Dr. Bogue—were not ASMG agents or supervisors when they committed wrongful acts, they were Sharp agents." Dr. Bogue complains that because the arbitrator accepted this argument, ASMG escaped liability by blaming Sharp. This is not an accurate representation of the arbitrator's decision. The portion of the decision that Dr. Bogue cites relates to the arbitrator's rejection of the factual allegations Dr. Bogue made alleging discrimination based on sexual orientation. The arbitrator states only that at the time Dr. Bjornson allegedly heard another doctor refer to Dr. Bogue by a derogatory name, Dr. Bjornson was not Dr. Bogue's supervisor at ASMG. This portion of the arbitration decision is not relevant to the issue of claim preclusion.[11]

In sum, we agree with the trial court that the same primary right at issue in the arbitration, i.e., the right to be free of retaliation for reporting patient safety concerns, is the only primary right at issue here. Accordingly, because Sharp is also in privity with ASMG with respect to Dr. Bogue's claims, the trial court correctly found the claims are precluded.

---

[11]    Likewise, Dr. Bogue's citations to ASMG's arbitration brief relate to his allegations of discrimination and harassment, and medical billing fraud, and not to the reporting of patient safety complaints.

C

*Dr. Bogue's Due Process Rights Have Not Been Violated*

As he did in the trial court, Dr. Bogue argues that his due process rights are violated if the doctrine of claim preclusion is applied to bar his claims against Sharp. Specifically, he argues that because the arbitrator dismissed his claim against ASMG under section 1278.5, the judgment in the earlier case can have no preclusive effect since he was denied a full and fair opportunity to litigate the claim. Citing a body of law addressing the related doctrine of issue preclusion, Dr. Bogue further argues that application of the doctrine of claim preclusion in the absence of a contractual agreement to arbitrate with Sharp violates his due process rights.

These arguments have no merit. As discussed, the doctrine of claim preclusion applies to bar a claim, regardless of the precise theory advanced against the defendant, so long as the cause of action is the same. (See *DKN Holders, supra*, 61 Cal.4th at pp. 826–827 ["Unlike claim preclusion, issue preclusion can be invoked by one not a party to the first proceeding. The bar is asserted *against* a party who had a full and fair opportunity to litigate the issue in the first case but lost. [Citation.] The point is that, once an issue has been finally decided against such a party, that party should not be allowed to relitigate the same issue in a new lawsuit."].) Thus, the arbitrator's dismissal of Dr. Bogue's statutory claim under section 1278.5 does not prevent ASMG's privy, Sharp, from asserting the claim preclusion defense. Because Dr. Bogue had the opportunity to fully litigate his claim for retaliation for reporting alleged patient safety concerns under Labor Code section 1102.5 and his wrongful termination claim, and those claims encompassed the same primary right at issue here, Sharp's assertion of the defense of res judicata to Dr. Bogue's claims is constitutional. (See *Cal*

28

*Sierra, supra*, 14 Cal.App.5th at p. 673 [" ' "This requirement of identity of parties or privity is a requirement of due process of law." [Citation.] "Due process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the losing party in the first action." ' "].)

With respect to the issue of whether a final judgment entered after an order confirming *an arbitration award* can have a preclusive effect in favor of a non-party to the arbitration agreement, Dr. Bogue relies on authority applicable to the related issue preclusion, or collateral estoppel, doctrine. The California Supreme Court case he relies on, *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, holds that "a private arbitration award, even if judicially confirmed, may not have nonmutual collateral estoppel effect under California law unless there was an agreement to that effect in the particular case." (*Id*. at p. 824.) In other words, issue preclusion cannot be used as a defense against a nonparty to the arbitration agreement in a later proceeding.

This rule, however, does not apply to the doctrine of claim preclusion because, unlike issue preclusion, both privity between the party to the arbitration agreement and the later defendant, and identity of the cause of action are required. (See *Vandenberg, supra*, 21 Cal.4th at p. 825, fn. 2 ["Our holding is narrowly circumscribed. Nothing in our decision imposes or implies any limitations on the strict res judicata, or 'claim preclusive,' effect of a California law private arbitration award."].) The due process concerns animating the *Vandenberg* rule are not present here.

First, unlike claim preclusion, any party, regardless of their relationship to the prior defendant, can invoke the doctrine of issue preclusion. Second, issue preclusion may be used defensively to preclude the

re-litigation of issues related to claims not fully litigated in a prior arbitration. Here, because Sharp is in privity with ASMG for purposes of these claims, and because the claims involve the resolution of the identical primary right, application of the doctrine of claim preclusion is appropriate. (See *Vandenberg, supra*, 21 Cal.4th at p. 828 [Issue preclusion "may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case. Moreover, because the estoppel need not be mutual, it is not necessary that the earlier and later proceedings involve the identical parties or their privies."]; see also *Brinton, supra*, 76 Cal.App.4th at pp. 557–558 ["Defendant was not a party to the arbitration proceeding. But since defendant's liability is merely derivative of [prior defendant], it is unnecessary for defendant to have been a party to the prior action to assert a claim preclusion defense in this case."]; and *LeVine, supra*, 131 Cal.App.4th at pp. 576–579 [rejecting application of *Vandenberg* where non-party to prior arbitration proceeding was held to be in privity with prior defendant under theories of aiding and abetting and conspiracy liability].)

In sum, we agree with the trial court that Dr. Bogue's due process rights were not violated. He was provided with a fair and adequate opportunity to litigate his claim of retaliation for raising patient safety concerns to ASMG and Sharp.

## D

### *Admissibility of Hearsay Evidence*

Dr. Bogue's final argument on appeal is that the trial court abused its discretion by allowing hearsay evidence. He contends that he objected to the use of declarations as evidence in the bifurcated first phase of the trial, and

30

he asserts without any elaboration that the court's reliance on hearsay declarations and their attached exhibits was prejudicial.

*1. Additional Background*

As discussed, just before trial, Sharp moved for a bifurcated trial, with the first phase addressing only its statute of limitations and res judicata defenses. The court denied the motion with respect to the statute of limitations, requested additional briefing on the issue of claim preclusion, and set a further hearing. At the hearing, the parties agreed that the issue of res judicata was properly decided by the court, not the jury. After argument on the issue, the court again asked for more briefing on specific questions related to the application of the doctrine. The parties submitted the requested briefing, and the court granted bifurcation on the issue of claim preclusion and scheduled a further conference to set a timeline for the first phase of the trial. The transcript for that scheduled conference does not appear in the record, but shortly after the parties submitted additional briefing, and Sharp submitted declarations and documentary evidence.

Thereafter, Dr. Bogue filed an objection to the declarations of Sharp's CEO, Tim Smith, ASMG's general counsel, Buberl, and to the exhibits attached to those declarations on the grounds they constituted inadmissible hearsay. Dr. Bogue also asserted he was entitled to the opportunity to cross-examine the two witnesses.[12] Sharp filed a response to the objection asserting the declarations and exhibits were admissible based on the parties' agreement to a trial on the documents.

At the start of the evidentiary portion of the first phase of trial, Dr. Bogue's counsel moved for judgment on defense under Code of Civil

---

[12] Dr. Bogue also objected to a portion of Sharp's counsel declaration and two attached exhibits.

Procedure section 631.8, asserting Sharp's claim preclusion defense failed because it had submitted only inadmissible hearsay in support. Sharp responded that Dr. Bogue's argument was meritless because the parties had stipulated to a trial on the briefs and declarations, with an agreement that Dr. Bogue could cross-examine the witnesses. The court deferred ruling on Dr. Bogue's motion and then Dr. Bogue's counsel proceeded to cross-examine Smith and Buberl. In its statement of decision, the court found the parties had agreed to the use of declarations and exhibits for the first trial phase.

*2. Analysis*

" 'A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447.) It is well established "that declarations constitute hearsay and are inadmissible at trial, subject to specific statutory exceptions, unless the parties stipulate to the admission of the declarations or fail to enter a hearsay objection." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1354.)

We agree with Sharp that the court did not abuse its discretion by considering the declarations and documentary evidence Dr. Bogue challenges as inadmissible hearsay. Although the record is not complete, it appears that the parties agreed both that the court would determine the application of the claim preclusion defense and that the determination would be in part based on the documents and declarations submitted by Sharp. Dr. Bogue was also provided with the opportunity he requested to cross-examine the two Sharp witnesses who submitted declarations.

32

Importantly, Dr. Bogue does not explain how he was prejudiced by the court's consideration of this evidence. Instead, he asserts only the circular argument that Sharp should not have been allowed to present the evidence, and that without that evidence Sharp could not have carried its burden of proof with respect to the res judicata defense. Thus, even if allowing the evidence was an abuse of the court's wide discretion, Dr. Bogue has failed to carry his burden to establish prejudice.[13] (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 [The California Constitution " 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.' "].) Accordingly, reversal on this basis is not warranted.

II

*Sharp's Cross-Appeal Is Dismissed as Moot*

Sharp's cross-appeal challenges the trial court's orders denying its motion for summary judgment and subsequent motion for judgment on the pleadings, both based on its assertion that Dr. Bogue's claims were barred by the applicable statutes of limitation. Sharp states that it has filed the cross-appeal as a protective measure in the event that we reverse the judgment in its favor. In light of our affirmance of the judgment, Sharp's cross-appeal is moot, and we dismiss it without reaching the merits. (See *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 510, 546 [dismissing protective cross-appeal as moot upon affirmance of opposing party's appeal].)

---

[13]     We also note that Dr. Bogue's reply brief contains no response to Sharp's arguments on this issue.

## DISPOSITION

The judgement is affirmed. Respondent Sharp Memorial Hospital is entitled to the costs of appeal.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.